Judge Underwood
dntiv. red the nni"ion of the court.
Railey purchased a printing press and type from Rav. To secure the purchase money, he executed a mortgage to Ray upon the press and type, bearing date 12th • October, 1824. In February, 1825, Railey sold to Wickliffe one half or an equal interest in the press and type, for $162 50, to be paid on the 28th September, 1825, and $162 50, to be paid on the 28th September, 1826, and $125, to be paid by the 1st March, 1825: this last stun being as the agreement recites, the half of the amount actually paid by Railey to Ray, and the two first named sums being half the amount contracted to be paid to Ray, and for which he held a lien on the press and type. On the 29th of August, 1826, Railey sold his remaining interest or half of the press and type to Jones, who agreed to pay therefor $210, in Commonwealth’s Bank notes, to Ray, or to the holder of said Railey’s note, due in “ October next;” also, $84 40, in the same currency, &c. On the 1st of October, 1827, Wickliffe sold his interest in the press and type to Jones for $225. The agreement between them contains the following stipulation: *304 4‘Said Jones also obliges himself, when the press and tvpe shall be sold under a decree pronounted at the September term of the Nelson circuit court, to bid in and purchase the same, or cause it to be done, so that said N. Wiekliffe shall be released, from all or any part of the debts owing on account of the original purchase of said press, &c. from Ray by Railey. It is also agreed by the parties, that, upon the payment of the sum herein stated'due S. Ray on the decree referred to, that all claim,' right, interest and title, of said Wiekliffe is to cease.”
In September, 1827, Ray obtained a decree foreclosing his mortgage, and an order for the sale of the press and type, to rai-e the sum of $325, with interest thereon from the 12th of October, 1826, and on the 29th of October following, the press and type were sold by the commissioner, when Jones became the purchaser at $370, thus leaving a balance of the principal, besides interest and costs due from Railey to Ray, and which Railey was compelled to pay by execution to Hundley, the assignee of Ray.
It is very clear that Railey. by his contracts with Wiekliffe and Jones, had fully provided for the settlement and di-chargé of. his note for $325, in Common wealt It’s paper, due Ray on the 12th of October, 1826. Jones was, by his contract, to pav $210 of the amount to Ray, or to the holder of the notes "Wickliffe’s payments were to be made to Railey', and if he had placed the funds in Railey’s hands according to contract, then Railey would have been enabled theieby to discharge the balance due Ray, or his assignee, after the payment of $210 by Jones. But Wiekliffe, instead of paying Railey, sold to Jones and took Jones’ covenant, that lie would purchase in the press, &c. when sold under the decree, so as to release him, Wiekliffe, from anv debt owing on account of the original purchase by Railey from Rav.
Railev instituted this action of covenant upon the contract with Jones, and assigned a breach in the non-pavmenf of the $210 hv Jones upon the note for $325, due Hundley, assignee of Ray, in Oct. 1826.
The court instructed the jury “that if they believed that Jones had paid under the decree the sum of *305 §300, and that snm, exclusive of interest and costs, amounted to more than $210; and if they further believe that Jones paid the judgment against Railey as specified in the covenant sued on (towit, the $84 40, which were to be paid in discharge of a judgment against Railey) then the law is for the defendant, and they ought so to find.” The jury found for the defendant.
Covenant to a^te u/eo°nantee" fi.r $325 in the han(1" ol a not'clraoharged by the payment of ®urobascof covenantee’s property, *° j.^s/iong af* ter the pa.y-merit ought to hive been made, according to the tenor and offset of the covenant, & the note for $323 had boon merged in a judgment against the drawer of the note. Purchase of the mortgaged property by covenantor payment i f J3 )0, for it was no more a performance of the covenant than if done by a stranger.
If the foregoing instruction be incorrect, the judgment must be reversed. That the payment of $300 under the decree, whether after deducting interest and costs, the balance would amount to $210 or not, was no discharge of Jones’ covenant to Railey, we think very clear. The suit by Hundley, as assignee of Ray, was not commenced against Railey until the 5th of June, 1827. Railey’s note for the $325, was due on the 12ih of October, 1826, near eight months before suit was instituted upon it. Now we think it was the duty of Jones to have paid the $210 at farthest, when Railey’s note became due. He agreed to make the payment in August before the note became due. If he bad done so, it is maní e t that Hundley would not have obtained a judgment against Railey for the whole amount of the note for $325, as he did do, and thep by the sale of the press and type under the decree, a sum sufficient to pay the judgment, after crediting the $210, would have been raised. It is needless, however, to comment on the advantages which would probably have resulted to Railey from such a course, for we are of opinion that the payment under the decree was no payment upon Railey’s note; for that note had been merged in the judgment obtained thereon by Hundley before the mortgaged property was sold under the decree. The purchase of the mortgaged property when sold under the decree, by Jones, and paying three hundred dollars for it, was no more a payment on Railey’s note, than if the mortgaged property 'had been purchased by a stranger to the transaction. It appears that no part of the money was paid by Jones, under his purchase of the mortgaged property until more than eight months had expired after the judgment was obtained hv Hundley against Railey. The payment of the money then, under the *306 decree could not amount to a legal satisfaction of Hundley’s judgment, and was therefore no compliwith Jones’ covenant to Railey.
Rudd, for plaintiff; Crittenden, for defendant.
The judgment must therefore lie reversed, and the cause remanded for a new trial, not inconsistent herewith.
The plaintiff in error must recover his costs.